Sandlow v 305 Riverside Corp. (2022 NY Slip Op 00023)





Sandlow v 305 Riverside Corp.


2022 NY Slip Op 00023


Decided on January 04, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 04, 2022

Before: Renwick, J.P., Mazzarelli, Singh, Mendez, Higgitt, JJ. 


Index No. 106025/11 Appeal No. 14767-14767A Case No. 2020-04523, 2021-00654 

[*1]Thomas Sandlow, Plaintiff-Respondent-Appellant,
v
305 Riverside Corp., Also Known as 305 Riverside Dr. Corporation, Defendant-Appellant-Respondent.


Horing Welikson Rosen & Digrugilliers, P.C., Williston Park (Niles C. Welikson of counsel), for appellant-respondent.
Sokolski & Zekaria, P.C., New York (Daphna Zekaria of counsel), for respondent-appellant.



Judgment, Supreme Court, New York County (Lucy Billings, J.), entered January 25, 2021, in plaintiff's favor, and appeal therefrom bringing up for review an order, same court and Justice, entered May 20, 2020, as amended by an order, same court and Justice, entered June 15, 2020, which, insofar as appealed from, after a nonjury trial, determined that defendant engaged in a fraudulent scheme to deregulate plaintiff's rent-stabilized apartment and calculated rent overcharges by reconstructing rent from the last reliable registered rent instead of using the default formula, and awarded plaintiff treble damages, predecision interest on the amount of rent overcharges before the period for which treble damages are allowable, postdecision interest, and attorneys' fees and costs, unanimously modified, on the law and facts, to vacate the overcharge damages award (including the interest awarded thereon) and the treble damages award, and to dismiss plaintiff's claims for rent overcharge and treble damages, and otherwise affirmed, without costs. Appeals from amended order unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Defendant's failure to provide plaintiff's predecessor with notice of the last legal regulated rent, although a violation of law, was not fraudulent (Fuentes v Kwik Realty LLC, 186 AD3d 435, 438 [1st Dept 2020]), especially since, as Supreme Court found, the deregulation of the apartment in 1997 was proper (compare 9 NYCRR 2522.5[c][3] [precluding rent increases "unless the owner can establish that the rent collected was otherwise legal"]). Defendant's agent, whose credibility is not addressed in the order under review, testified that he relied on the 1996 advisory opinion by the Division of Housing and Community Renewal to support his belief that the receipt of J-51 benefits would not affect apartment regulation. Though the agent's reliance proved to be misplaced (see Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 281-282 [2009]), his testimony does not show a conscious and knowing violation (see Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 356 n 7 [2020]).
That defendant did not file retroactive rent registrations until 2011, and, even then, only back to 2007, also does not demonstrate fraud, since "the retroactivity of Roberts was not settled until 2012," when an appeal of this Court's decision finding retroactivity was withdrawn (Goldfeder v Cenpark Realty LLC, 187 AD3d 572, 573 [1st Dept 2020], lv denied — NY3d &mdash, 2021 NY Slip Op 75989 [2021], citing Matter of Park v New York State Div. of Hous. & Community Renewal, 150 AD3d 105, 110 [1st Dept 2017], lv dismissed 30 NY3d 961 [2017], and Gersten v 56 7th Ave. LLC, 88 AD3d 189, 198 [1st Dept 2011], appeal withdrawn 18 NY3d 954 [2012]). Nor does defendant's decision not to file additional registrations retroactively show fraud, given defendant's reliance on the four-year statutory lookback period [*2](see former CPLR 213-a; former Administrative Code of City of NY § 26-512[a][2]; see also Matter of Regina, 35 NY3d at 358 n 9 [rejecting rent freeze where owner filed retroactive registration statements covering only four-year lookback period]).
Further, the 2004 apartment renovation does not demonstrate fraud. On the contrary, defendant "sufficiently documented the apartment improvements" by proffering the estimate, invoices, checks showing payment of all the sums charged, and testimony from its own agents and the general contractor that the work was done (Matter of Park, 150 AD3d at 115; see also Fuentes, 186 AD3d at 438 [no fraud despite "failure to maintain any records" of individual apartment improvements]; contra Altschuler v Jobman 478/480, LLC., 135 AD3d 439, 440 [1st Dept 2016] [allegations of fraud not refuted where no estimates, invoices, or records of payment were proffered], lv dismissed 28 NY3d 945 [2016], lv denied 29 NY3d 903 [2017]). Plaintiff's expert's credible testimony as to the amount the contractor should have charged, how much of the renovation would have qualified as individual apartment improvements, and the contractor's subpar work or failure to install crown molding does not prove that the work was not performed (compare Nolte v Bridgestone Assoc. LLC, 167 AD3d 498, 498-499 [1st Dept 2018] [the defendant submitted no evidence controverting the plaintiff's expert affidavit that there was no evidence of claimed improvements]).
Because plaintiff failed to show that "a fraudulent scheme to destabilize the apartment tainted the reliability of the rent on the base date" (Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d 358, 367 [2010]), the base date rent on May 23, 2007 is the amount plaintiff was paying at the time, and he may recover "the increases added to the . . . base date rent that were over the legal limits during the recovery period" (Matter of Regina, 35 NY3d at 357).
Because there was no evidence of a fraudulent scheme to deregulate, there is no reason to look further than the applicable four-year period for the calculation of a rent overcharge, if any, in this action predating the Housing Stability and Tenant Protection Act of 2019 (see id. at 355). To determine whether, in the absence of fraud, defendants overcharged plaintiff, "the base date rent [is] the rent actually charged on the base date (four years prior to initiation of the claim) and overcharges [are] to be calculated by adding the rent increases legally available to the owner under the [Rent Stabilization Law] during the four-year recovery period. [Plaintiff is] therefore entitled to damages reflecting only the increases collected during that period that exceeded legal limits" (id. at 356).
In this case, there was no overcharge because the rent was not illegally inflated during the relevant four-year period. Plaintiff commenced the action on May 23, 2011; thus, the "base date" for calculating whether [*3]an overcharge occurred was May 23, 2007, four years prior to the filing of the complaint. According to the trial evidence, the base date rent was plaintiff's initial rent of $9,150, which was never exceeded through the date of his complaint.[FN1]
In light of this finding, plaintiff is not entitled to damages for an overcharge, treble damages, or interest.
With respect to the determination of the trial court to award plaintiff attorneys' fees, the relevant lease language triggered Real Property Law § 234's implied reciprocal covenant (see Graham Court Owner's Corp. v Taylor, 24 NY3d 742, 749 [2015]). Moreover, plaintiff prevailed on his cause of action for declaratory judgment and related injunctive relief regarding the rent-stabilization status of the apartment. For those reasons, and in light of the manner in which the attorneys' fees issue has been litigated (cf. Stulz v 305 Riverside Corp., 150 AD3d 558, 559 [1st Dept 2017], lv denied 30 NY3d 909 [2018]), plaintiff is entitled to an award of attorneys' fees and a hearing was properly directed on that subject. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 
ENTERED: January 4, 2022



Footnotes

Footnote 1: Plaintiff was charged $9,150.00 per month from May 2007 to March 2010, $8,750.00 per month from April 2010 to April 2011, and $9,150.00 for the month of May 2011, for a total of $443,150.00. Plaintiff paid $9,150.00 per month from May 2007 to January 2010, and paid $8,750.00 per month from February 2010 to May 2011, for a total of $441,950.00. Accordingly, whether calculating from the rent owed or the rent charged, and disregarding any increases to which defendants may have been entitled, there was no overcharge (see e.g. Goldfeder v Cenpark Realty LLC, 187 AD3d at 572).