Gomes v Vermyck, LLC (2025 NY Slip Op 00849)

Gomes v Vermyck, LLC

2025 NY Slip Op 00849

Decided on February 13, 2025

Appellate Division, Second Department

Connolly, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 13, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
CHERYL E. CHAMBERS
DEBORAH A. DOWLING
HELEN VOUTSINAS, JJ.

2022-02763
 (Index No. 713219/18)

[*1]Jacobus Gomes, etc., et al., respondents,
v
Vermyck, LLC, appellant.

APPEAL by the defendants, in an action, inter alia, to recover damages for rent overcharges, from an order of the Supreme Court (Sally E. Unger, J.), dated March 21, 2022, and entered in Queens County. The order, insofar as appealed from, upon a decision of the same court (Richard G. Latin) dated January 12, 2021, granted those branches of the plaintiffs' motion which were for summary judgment on the causes of action alleging a violation of Rent Stabilization Law § 26-512 and for an award of attorneys' fees, to direct application of the formula set forth in Rent Stabilization Code (9 NYCRR) §§ 2522.6(b)(3) and 2526.1(g) to calculate the legal regulated rents of the subject apartment units and any rent overcharges, and to refer the matter to a special referee to calculate, among other things, the legal regulated rents under the formula set forth in Rent Stabilization Code (9 NYCRR) §§ 2522.6(b)(3) and 2526.1(g), any rent overcharges, and attorneys' fees, and referred the matter to a special referee for such calculations.

Horing Welikson Rosen & Digrugilliers, P.C., Williston Park, NY (Randi Beth Gilbert and Richard T. Walsh of counsel), for appellant.
Newman Ferrara LLP, New York, NY (Lucas A. Ferrara and Roger A. Sachar of counsel), for respondents.

CONNOLLY, J.P.

OPINION & ORDER
In March 2024, the Legislature enacted chapter 95 of the Laws of 2024 (hereinafter the chapter amendments), which, inter alia, amended section 2 of part B of chapter 760 of the Laws of 2023 (hereinafter the 2023 act) and which set forth a standard for courts to use when determining claims alleging a fraudulent scheme to deregulate a rent-stabilized apartment unit (see L 2024, ch 95, § 4). This appeal requires us to address a number of questions related to the chapter amendments.
First, we must determine whether so much of the chapter amendments as set forth the standard for determining a fraudulent scheme to deregulate a rent-stabilized apartment unit applies to actions such as this one, which were commenced before the effective date of the chapter amendments but were pending before a court on the effective date. We hold that it does.
Next, we must determine whether the defendant established that so much of the chapter amendments as set forth the standard for determining a fraudulent scheme to deregulate an apartment unit is unconstitutional on its face or whether it would be unconstitutional to apply that portion of the chapter amendments to this action. We hold that the defendant did not establish that the relevant portion of the chapter amendments is unconstitutional, either on its face or as applied in this action.
Finally, applying the standard set forth in the chapter amendments, we must determine [*2]whether the plaintiffs met their prima facie burden of demonstrating that the defendant engaged in a fraudulent scheme to deregulate the subject apartment units such that the formula set forth in Rent Stabilization Code (9 NYCRR) §§ 2522.6(b)(3) and 2526.1(g) (hereinafter the default formula) should be used to calculate the legal regulated rent and any rent overcharges. We hold that the plaintiffs did not meet their prima facie burden.
I. Factual and Procedural Background
The defendant, the owner of a building with 84 residential apartment units located in Queens (hereinafter the building), received benefits under New York City's J-51 tax abatement and exemption program until 2015. The J-51 program, which was authorized by Real Property Tax Law § 489, allowed property owners who completed eligible projects to receive tax exemptions and/or abatements that continued for a period of years (see Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 280; Gridley v Turnbury Vil., LLC, 196 AD3d 95, 98). As will be discussed more fully herein, as a condition of receiving those benefits, apartment units in a building receiving J-51 benefits were to be rent stabilized or rent controlled during the period J-51 benefits were received (see Rent Stabilization Law of 1969 [Administrative Code of City of NY] § 26-501 et seq.; 28 RCNY 5-03[f]; Roberts v Tishman Speyer Props., L.P., 13 NY3d at 280).
In October 2014, while the defendant was receiving J-51 benefits, the defendant and the plaintiffs Jacobus Gomes and Kathryn Gomes (hereinafter together the plaintiffs) entered into a one-year written lease for a certain apartment unit in the building. It was not a rent-stabilized lease, and the apartment unit was not listed as rent stabilized with the New York State Department of Housing and Community Renewal (hereinafter the DHCR).
In January 2016, the DHCR notified landlords of buildings that received J-51 tax benefits that "any apartment that was subject to Rent Stabilization at the date of the receipt of the J-51 benefits" must be registered as rent stabilized (see Gridley v Turnbury Vil., LLC, 196 AD3d at 99-100). In response to the DHCR's notice in 2016, the defendant re-registered the plaintiffs' apartment unit and other apartment units that had been deregulated while the defendant was receiving J-51 benefits as rent stabilized.
On August 27, 2018, the plaintiffs commenced this action against the defendant alleging, among other things, that the defendant engaged in a fraudulent scheme to deregulate rent-stabilized apartment units while receiving J-51 tax benefits. The plaintiffs alleged that they were entitled to, inter alia, monetary damages based upon the unlawful rent overcharges, a declaratory judgment declaring the amount of the legal regulated rent for certain apartment units, and an award of reasonable attorneys' fees pursuant to CPLR 909. Thereafter, the plaintiffs obtained class certification for all tenants in the building currently living or who had lived in apartment units that were deregulated during the period when J-51 tax benefits were being received by the defendant [FN1]. In July 2020, the plaintiffs moved, among other things, for summary judgment on the causes of action alleging a violation of Rent Stabilization Law (hereinafter RSL) (Administrative Code of City of NY) § 26-512 and for an award of attorneys' fees, to direct the application of the default formula to calculate the legal regulated rents of the subject apartment units and any rent overcharges, and to refer the matter to a special referee to calculate, inter alia, the legal regulated rents under the default formula, any rent overcharges, and attorneys' fees. The plaintiffs contended, among other things, that the defendant improperly deregulated rent-stabilized apartment units while receiving J-51 benefits. The plaintiffs further contended that, in doing so, the defendant engaged in a fraudulent scheme to deregulate the apartment units and that, therefore, the Supreme Court should refer the matter to a special referee to calculate, inter alia, the legal regulated rents under the default formula, any rent overcharges, and attorneys' fees. In support of their motion, the plaintiffs submitted, among other things, copies of the DHCR rent roll for the building, the 2017 annual apartment registration for the plaintiffs' apartment unit, and a 2018 lease renewal notice sent to the plaintiffs. The plaintiffs also submitted a copy of an affidavit from George Mycak, the managing agent for the defendant, sworn on October 1, 2018 (hereinafter the 2018 Mycak affidavit), and a copy of the defendant's memorandum of law dated October 12, 2018 (hereinafter the defendant's 2018 memorandum of law), both of which the defendant had submitted in connection with a prior motion in this action. Based on these submissions, the plaintiffs contended that the defendant deregulated [*3]rent-stabilized apartment units while the building received J-51 benefits even after appellate decisions made clear that owners could not do so, belatedly waited until 2016 to re-register apartment units, and then re-registered the rent for the plaintiffs' apartment unit at an improper rent in contravention of the DHCR's guidelines.
The defendant opposed the plaintiffs' motion and submitted, inter alia, a second affidavit from Mycak sworn on September 10, 2020 (hereinafter the 2020 Mycak affidavit). The defendant, among other things, acknowledged that it deregulated apartment units while receiving J-51 benefits but denied that it had engaged in a fraudulent scheme in so doing. The defendant contested the use of the default formula to calculate the legal regulated rents or any rent overcharges. The defendant further contended that because the plaintiffs were charged preferential rents during the relevant time period that were less than the legal regulated rents, there were no rent overcharges.
By order dated March 21, 2022, the Supreme Court, inter alia, granted those branches of the plaintiffs' motion which were for summary judgment on the causes of action alleging a violation of RSL § 26-512 and for an award of attorneys' fees, to direct the application of the default formula to calculate the legal regulated rents of the subject apartment units and any rent overcharges, and to refer the matter to a special referee to calculate, among other things, the legal regulated rents under the default formula, any rent overcharges, and attorneys' fees, and referred the matter to a special referee for such calculations. The order, inter alia, determined that the defendant engaged in a fraudulent scheme to evade the rent regulations, thereby requiring the imposition of the default formula, that the class is entitled to recovery of any rent overcharges in the amount of the difference between the monthly rent charged and the base date rent calculated pursuant to the default formula, that the legal regulated rent stated in the leases for current tenants shall be calculated pursuant to the default formula, and that the plaintiffs' lead counsel was entitled to attorneys' fees pursuant to CPLR 909. The court referred the matter to a special referee to calculate, inter alia, the amount of any rent overcharge to the class pursuant to the default formula and the amount of the plaintiffs' lead counsel's attorneys' fees. The defendant appeals.
While this appeal was pending, the Legislature enacted the chapter amendments. At this Court's request, the parties submitted supplemental briefing on the chapter amendments.
II. Liability for Improper Deregulation While Receiving J-51 Benefits
Pursuant to Real Property Tax Law § 489, the City of New York was authorized to grant tax abatements, which are generally referred to as J-51 benefits (see Administrative Code of City of NY § 11-243), to landlords who made certain improvements to their properties (see RPTL § 489; Gridley v Turnbury Vil., LLC, 196 AD3d at 99). In 1993, the Legislature provided for luxury decontrol or deregulation of rent-stabilized apartment units if certain requirements were met (see L 1993, ch 253; Gridley v Turnbury Vil., LLC, 196 AD3d at 98). However, at that time, the Administrative Code of the City of New York former §§ 26-504.1 and 26-504.2 provided that such luxury deregulation "shall not apply to housing accommodations which became or become subject to this law" by virtue of receipt of J-51 benefits (see Gridley v Turnbury Vil., LLC, 196 AD3d at 99). In 1996, the DHCR interpreted these laws and regulations as precluding deregulation of apartment units receiving J-51 benefits only where the receipt of such benefits was the sole reason why the apartment unit was subject to rent regulation (see Roberts v Tishman Speyer Props., L.P., 13 NY3d at 281; Gridley v Turnbury Vil., LLC, 196 AD3d at 99).
In October 2009, the Court of Appeals in Roberts v Tishman Speyer Props., L.P. (13 NY3d at 285-287) held that the DHCR's interpretation was wrong and that luxury decontrol or deregulation of apartment units was unavailable for any building during the receipt of J-51 benefits (see id.; see also Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 350). However, the Court of Appeals noted that it was "yet to be decided" whether its decision applied retroactively (Roberts v Tishman Speyer Props., L.P., 13 NY3d at 287).
In August 2011, the Appellate Division, First Department, in Gersten v 56 7th Ave. LLC (88 AD3d 189) held that the Court of Appeals' holding in Roberts v Tishman Speyer Props., L.P. applied retroactively. However, it was not until November 2014 in Borden v 400 E. 55th St. Assoc., L.P. (24 NY3d 382) that the Court of Appeals, in effect, recognized that its holding in Roberts applied retroactively (see id. at 390). Thus, qualified plaintiffs can recover compensatory rent overcharges that resulted from improperly treating apartment units as exempt from rent stabilization while the owner accepted J-51 benefits (see id. at 389-390; Gridley v Turnbury Vil., LLC, 196 AD3d at 99), even if those units were deregulated prior to Roberts.
Here, as the defendant conceded and the record demonstrated, the defendant deregulated rent-stabilized apartment units while continuing to receive benefits for the building through New York City's J-51 program (see Jekielek v 260 Partners, LP, 221 AD3d 565, 565-566; Corcoran v Narrows Bayview Co., LLC, 183 AD3d 511, 511). As the Supreme Court properly determined, the defendant is liable for that conduct. Among other things, improperly deregulated apartment units must be re-registered as rent stabilized and current tenants must be provided with rent-stabilized leases. Moreover, the class is entitled to recover rent overcharges, if any, in the amount of the difference between the monthly rent charged and the base date rent.
Nevertheless, the parties dispute the amount of the legal regulated rent and how the base date rent should be determined, which, in turn, determines how damages for rent overcharges, if any, should be calculated. According to the plaintiffs, the defendant engaged in a fraudulent scheme to deregulate the subject apartment units, and, therefore, the default formula must be used to determine the legal regulated rent and the amount of the base date rent to be used for calculating rent overcharges. The plaintiffs further contend that the standard set forth in the chapter amendments, which became effective while this appeal was pending, should be used to determine whether the defendant engaged in a fraudulent scheme to deregulate the subject apartment units. For its part, the defendant denies that it engaged in a fraudulent scheme to deregulate the subject apartment units, contends that so much of the chapter amendments as set forth the standard for determining whether an owner engaged in a fraudulent scheme is unconstitutional and should not be applied in this case, and, therefore, contends that the default formula should not be used to calculate damages for any alleged rent overcharges.
Before we address these specific contentions, it is necessary to provide background on how the base date rent is determined and how damages for a rent overcharge are calculated. It is also necessary to describe the history of the law on the exception for a fraudulent scheme to deregulate an apartment unit, which led to the enactment of the 2023 act and the chapter amendments.
III. Fraudulent Scheme to Deregulate and Use of the Default Formula Until the 2023 Act
Until the enactment of the Housing Stability and Tenant Protection Act of 2019 (hereinafter the HSTPA) (L 2019, ch 36), which will be discussed more fully below, the statute of limitations for any claims of a rent overcharge to tenants whose apartment units were improperly deregulated was four years (see CPLR former 213-a; Administrative Code of City of NY former § 26-516[a][2]). Generally, "an overcharge was to be calculated by using the rent charged on the date four years prior to filing of the overcharge complaint (the lookback period) as the 'base date rent,' adding any legal increases applicable during the four-year lookback period and computing the difference between that legal regulated rent and the rent actually charged to determine if the tenant was overcharged during the recovery period" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 348). Moreover, in general, consideration of the rental history predating the four-year lookback and statute of limitations period was prohibited (see id.).
However, 9 NYCRR 2526.1 set forth an exception that allowed for an examination of the rental history of an apartment unit prior to the four-year lookback period where there was a fraudulent scheme to deregulate the apartment unit (see id. § 2526.1[a][2]; [g]; Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 354). In addition, 9 NYCRR 2522.6(b)(2)(iii) provided, among other things, that if the building owner had engaged in "a fraudulent scheme to deregulate the apartment" unit, the rent would be determined by a "default formula" (Thornton v Baron, 5 NY3d 175, 181; see 9 NYCRR 2522.6[b][2], [3]). "The default formula provides for the base date to be established at the lowest of (1) the lowest registered rent for a comparable apartment in the building at the time the complaining tenant moved in, (2) the complaining tenant's initial rent reduced by a certain percentage, (3) the last registered rent paid by the prior tenant within the lookback period, or (4) if none of those is appropriate, an amount set by DHCR based on its relevant data" (Simpson v 16-26 E. 105, LLC, 176 AD3d 418, 419, citing 9 NYCRR 2522.6[b][3]; 2526.1[g]).
In a series of cases between 2009 and 2015, the Court of Appeals examined the use of the default formula based on the exception for a fraudulent scheme to deregulate an apartment unit (see Conason v Megan Holding, LLC, 25 NY3d 1, 16; Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d 358, 366; Thornton v Baron, 5 NY3d at 181). [*4]In Thornton v Baron (5 NY3d 175), the owner conspired with tenants, who shared in the illegal profits, by falsely agreeing that an apartment unit was not being used as a primary residence in order to rent at market rates and then subletting at even higher rates (see id. at 179-181; see also Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 354). In Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin. (15 NY3d 358), inter alia, the petitioner tenant alleged that the tenants immediately preceding the petitioner tenant paid significantly more than the previously registered rent, the preceding tenants were not given a rent-stabilized lease rider, and the preceding tenants were informed that their rent would be higher but for their performance of upgrades and improvements at their own expense (see id. at 366). In Conason v Megan Holding, LLC (25 NY3d 1), the owner created a fictitious tenant and a fictitious renovation to justify a rent increase (see id. at 9; see also Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 354). The rule that emerged from these cases was that the rental history of apartment units beyond the four-year lookback rule could be examined "for the limited purpose" of determining whether a fraudulent scheme to deregulate the apartment unit tainted the reliability of the rent on the base date, and if fraud was established, then the default formula could be used to set the base date rent (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 355 [internal quotation marks omitted]; see Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d at 367).
In 2019, the Legislature enacted the HSPTA (see L 2019, ch 36), which extended the statute of limitations for rent overcharge claims to six years (see Administrative Code of City of NY § 26-516; CPLR 213-a; Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 363). Among other things, the HSPTA also eliminated the prohibition on considering the rental history beyond four years (see Administrative Code of City of NY § 26-516[a][2]; Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 363-364). Instead, "all available rent history which is reasonably necessary" to investigate rent overcharge claims and to determine the legal regulated rent should be considered (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 364 [internal quotation marks omitted]).
In 2020, the Court of Appeals in Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal (35 NY3d at 363) ruled that "the overcharge calculation amendments cannot be applied retroactively to overcharges that occurred prior to their enactment." In addition, the Court of Appeals noted that in "Roberts cases" where "owners removed apartments from stabilization consistent with agency guidance[,] [d]eregulation of the apartments during receipt of J-51 benefits was not based on a fraudulent misstatement of fact but on a misinterpretation of the law—significantly, one that DHCR itself adopted" (id. at 356). The Court of Appeals further noted that "a finding of willfulness 'is generally not applicable to cases arising in the aftermath of Roberts,'" and "[b]ecause conduct cannot be fraudulent without being willful, it follows that the fraud exception to the lookback rule is generally inapplicable to Roberts overcharge claims" (id., quoting Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d at 398). In footnote seven, the Court of Appeals stated that "[f]raud consists of evidence of a representation of material fact, falsity, scienter, reliance and injury" and that "[i]n this context, willfulness means consciously and knowingly charging . . . improper rent" (id. at 356 n 7 [alteration and internal quotation marks omitted]). Thus, "under pre-HSTPA law, the four-year lookback rule and standard method of calculating legal regulated rent govern in Roberts overcharge cases, absent fraud" (id. at 361; see Gridley v Turnbury Vil., LLC, 196 AD3d at 101).
In 2021, this Court in Gridley v Turnbury Vil., LLC (196 AD3d at 101, 103), based upon, inter alia, footnote seven in Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, held that the elements of common-law fraud, including scienter, were required to establish a fraudulent scheme to deregulate an apartment unit such that the default formula should be used to calculate the rent. The First Department similarly held that plaintiffs were required to establish the elements of common-law fraud in order to establish a fraudulent scheme to deregulate an apartment unit (see Aras v B-U Realty Corp., 221 AD3d 5, 11-12; Hess v EDR Assets LLC, 217 AD3d 542, 542; Woodson v Convent 1 LLC, 216 AD3d 585, 588; Burrows v 75-25 153rd St., LLC, 215 AD3d 105, 113, lv granted 41 NY3d 906).
IV. The 2023 Act and the Chapter Amendments
On December 22, 2023, the Legislature enacted the 2023 act. The legislative findings for part B of the 2023 act provided that:
"in light of court decisions arising under the Housing Stability and Tenant Protection Act of 2019 (HSTPA), including Regina Metro v. DHCR, it is public policy that the legislature define clearly the scope of the fraud exception to the pre-HSTPA four-year rule for calculating rents which remains unsettled and the subject of litigation where courts have diverged from the controlling authority of Thornton v. Baron and Grimm v. DHCR to impose a common law fraud standard that is not found in these cases and is inconsistent with the intent of the legislature to discourage and penalize fraud against the rent regulatory system itself, as well as against individual tenants, and it is therefore public policy that the legislature codify, without expanding or reducing the liability of landlords under pre-HSTPA law, the standard for applying that exception" (L 2023, ch 760, part B, § 1 [emphasis added]).
Section 2(a) of the 2023 act provided that "[n]othing in this act, or the HSTPA, or prior law, shall be construed as restricting, impeding or diminishing the use of records of any age or type, going back to any date that may be relevant, for purposes of determining the status of any apartment under the rent stabilization law" (id. § 2[a]). Section 2(b) of the 2023 act provided, as relevant here, that with respect to the calculation of legal rents for the period prior to June 14, 2019,
"an owner shall be deemed to have committed fraud if the owner shall have committed a material breach of any duty, arising under statutory, administrative or common law, to disclose truthfully to any tenant, government agency or judicial or administrative tribunal, the rent, regulatory status, or lease information, for purposes of claiming an unlawful rent or claiming to have deregulated an apartment, whether or not the owner's conduct would be considered fraud under the common law, and whether or not a complaining tenant specifically relied on untruthful or misleading statements in registrations, leases, or other documents. The following conduct shall be presumed to have been the product of such fraud . . . beginning October 1, 2011, failing to register, as rent stabilized, any apartment in a building receiving J-51 . . . benefits" (id. § 2[b] [emphasis added]).
Section 3 provided that the 2023 act shall take effect immediately (see id. § 3).
In an approval memorandum, the Governor of New York, Kathy Hochul, stated, among other things, that the 2023 act "required several amendments to avoid unintended consequences and address technical legal concerns" (Governor's Approval Mem, Bill Jacket, L 2023, ch 760 at 5). Governor Hochul further stated that she had "reached an agreement with the Legislature to make these changes to the law after it is enacted" and "[b]ased on that agreement," she signed the bill enacting the 2023 act (see id.).
In March 2024, the Legislature enacted the chapter amendments, which amended the 2023 act (see L 2024, ch 95). As relevant here, the chapter amendments amended section 2 of part B of the 2023 act to provide:
"§ 2-a. When a colorable claim that an owner has engaged in a fraudulent scheme to deregulate a unit is properly raised as part of a proceeding before a court of competent jurisdiction . . . a court of competent jurisdiction . . . shall issue a determination as to whether the owner knowingly engaged in such fraudulent scheme after a consideration of the totality of the circumstances. In making such determination, the court . . . shall consider all of the relevant facts and all applicable statutory and regulatory law and controlling authorities, provided that there need not be a finding that all of the elements of common law fraud, including evidence of a misrepresentation of material fact, falsity, scienter, reliance and injury, were satisfied in order to make a determination that a fraudulent scheme to deregulate a unit was committed if the totality of the circumstances nonetheless indicate that such fraudulent scheme to deregulate a unit was committed" (L 2024, ch 95, § 4 [emphasis added]).
The chapter amendments also amended section 3 of the 2023 act so as to provide that the 2023 act "shall take effect immediately and shall apply to any action or proceeding in any court . . . on the [*5]effective date of this act" (id. § 5). Section 6 of the chapter amendments set forth that the chapter amendments themselves shall take effect immediately, provided, as relevant here, that sections 4 and 5 shall take effect "on the same date and in the same manner as part B of [the 2023 act] relating to defining clearly the scope of the fraud exception to the pre-HSTPA four-year rule for calculating rents . . . takes effect" (id. § 6).
V. Retroactivity and Constitutional Contentions
The plaintiffs contend that, pursuant to the clear language of the chapter amendments, the standard for establishing a fraudulent scheme to deregulate an apartment unit should apply to this action, even though the chapter amendments were not in effect either at the time of the defendant's alleged conduct or at the time the plaintiffs commenced this action. The plaintiffs further contend that the application of the fraud exception as set forth in the chapter amendments would not be unconstitutional. By contrast, the defendant contends that so much of the chapter amendments as set forth the standard for establishing the fraud exception is unconstitutionally retroactive under Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal (35 NY3d 332) because it punishes conduct that occurred prior to its enactment [FN2].
Initially, as provided by the express language of sections 5 and 6 of the chapter amendments, the provisions of the chapter amendments relating to the standard for establishing a fraudulent scheme to deregulate an apartment unit are effective as of December 22, 2023, the effective date of the 2023 act (see L 2024, ch 95, §§ 5, 6). Furthermore, based upon the express language of section 5 of the chapter amendments, this standard shall "apply to any action or proceeding in any court . . . on the effective date of this act," which was December 22, 2023 (id. § 5). The legislative history of the chapter amendments also indicates that the effective date of part B of the 2023 act was amended to clarify that it was to apply to "all pending and future proceedings" (NY Comm Report, 2023 NY Senate Bill S8011; see generally People v Badji, 36 NY3d 393, 399 ["although the strongest indication of the statute's meaning is in its plain language, the legislative history of an enactment may also be relevant and is not to be ignored, even if words be clear" (internal quotation marks omitted)]). Accordingly, we conclude that the Legislature intended that the standard for establishing a fraudulent scheme to deregulate an apartment unit as set forth in the chapter amendments should apply in actions such as this one, which was pending before this Court on December 22, 2023 (see generally Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 373-374 [concluding that "claims pending" language in part F of the HSTPA must be construed as evincing a retroactive intent to apply part F to timely pending claims (internal quotation marks omitted)]). We thus turn to the defendant's constitutional contentions.
As the Court of Appeals stated in Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal (35 NY3d at 375), "[t]o comport with the requirements of due process, retroactive application of a newly enacted provision must be supported by a legitimate legislative purpose furthered by rational means" (internal quotation marks omitted). "[L]egislative direction concerning the scope of a statute carries a presumption of constitutionality, and the party challenging that direction bears the burden of showing the absence of a rational basis justifying retroactive application of the statute" (id.). However, it is the retroactive application of the legislation itself that must be justified by a rational legislative purpose (see id.; see also Pension Benefit Guaranty Corporation v R.A. Gray & Co., 467 US 717, 730). Further, "[b]ecause retroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation, the justifications for prospective legislation may not suffice for the retroactive aspects" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 375 [citation, alteration, and internal quotation marks omitted]).
Here, the defendant failed to establish that the retroactive application of so much of the chapter amendments as set forth the standard for establishing a fraudulent scheme to deregulate an apartment unit was not justified by a rational legislative purpose (see General Motors Corp. v Romein, 503 US 181, 191). In the 2023 act, the Legislature expressly stated its reasons for the retroactive application: to "define clearly the scope of the fraud exception to the pre-HSTPA four-year rule for calculating rents" and its perception that court decisions, including Matter of [*6]Regina Metro. Co., LLC had "diverged from the controlling authority of Thornton v. Baron and Grimm v. DHCR to impose a common-law fraud standard that is not found in these cases" and which was "inconsistent with the intent of the legislature to discourage and penalize fraud against the rent regulatory system itself" (L 2023, ch 760, part B, § 1; cf. Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 384 [noting that the text of the HSTPA and its legislative history made no reference to judicial confusion or to Roberts]). The United States Supreme Court has recognized that, under some circumstances, correcting unexpected results of court decisions may serve as a rational basis for retroactive legislation (see General Motors Corp. v Romein, 503 US at 191 [holding that a Michigan statute with retroactive provisions had a legitimate legislative purpose furthered by rational means where the purpose of the statute was to correct the unexpected results of a Michigan Supreme Court opinion]).
Moreover, we conclude that this legislative purpose sufficiently justified any alleged unfairness to owners posed by the retroactive application of the relevant provisions of the chapter amendments (see generally Matter of 160 E. 84th St. Assoc. LLC v New York State Div. of Hous. & Community Renewal, _____ NY3d _____, 2024 NY Slip Op 06377 [neither owners nor tenants can expect the RSL to remain static]). In contrast to the "broadly applicable amendments" addressed in Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal (35 NY3d at 384), the relevant provisions of the chapter amendments only involve cases alleging a fraudulent scheme to deregulate an apartment unit. Owners never had any right to engage in a fraudulent scheme to deregulate an apartment unit (see id. at 361). Nor do the chapter amendments increase owners' liability for engaging in that conduct. Accepting that the Legislature meant what it said in the 2023 act, the Legislature set forth the standard for applying the fraud exception "without expanding or reducing the liability of landlords under pre-HSTPA law" (L 2023, ch 760, part B, § 1 [emphasis added]). Nevertheless, the defendant contends that the chapter amendments, by relieving tenants of the requirement of proving all of the elements of common-law fraud, provide a more lenient standard that tenants may use in order to prove a fraudulent scheme to deregulate an apartment unit, thereby, in effect, retroactively increasing the liability for past conduct.
However, and importantly, we have been unable to find any cases holding that all of the elements of common-law fraud must be proven in order to establish an owner's fraudulent scheme to deregulate an apartment unit prior to Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, which was decided in 2020. Although the owners' alleged conduct in Thornton v Baron (5 NY3d 175), Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin. (15 NY3d 358), and Conason v Megan Holding, LLC (25 NY3d 1) was "egregious" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 354), the Court of Appeals never stated in those cases that the tenants were required to establish all of the elements of common-law fraud in order to establish a fraudulent scheme to deregulate an apartment unit (see Conason v Megan Holding, LLC, 25 NY3d 1; Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d 358; Thornton v Baron, 5 NY3d 175). In this context, we view the Legislature's purpose that the standard for establishing a fraudulent scheme to deregulate an apartment unit should be that which was set forth in Thornton v Baron (5 NY3d 175), Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin. (15 NY3d 358), and Conason v Megan Holding, LLC (25 NY3d 1) as a rational response to Matter of Regina Metro. Co., LLC (cf. Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 384). It was within the province of the Legislature to respond to Matter of Regina Metro Co., LLC in this manner (see General Motors Corp. v Romein, 503 US at 191), regardless of whether we agree with it (see Olsen v Nebraska ex rel. Western Reference & Bond Assn., Inc., 313 US 236, 246 ["We are not concerned . . . with the wisdom, need, or appropriateness of the legislation"]; I.L.F.Y. Co. v City Rent & Rehabilitation Admin., 11 NY2d 480, 490; Birkeland v State of New York, 98 AD2d 395, 398, affd 64 NY2d 663).
As to the alleged unfairness to the defendant in this case, when the defendant allegedly engaged in the wrongful conduct at issue here, all of which occurred before 2016, no case held that it was necessary to establish all of the elements of common-law fraud in order to establish a fraudulent scheme to deregulate an apartment unit. Likewise, in 2018, when the plaintiffs commenced this action, no case held that they were required to prove all of the elements of common-law fraud in order to establish that the defendant engaged in a fraudulent scheme to deregulate an apartment unit. It may be that between 2020 and December 22, 2023, the defendant stood to benefit [*7]from the holding in Matter of Regina Metro Co., LLC, as well as this Court's and the First Department's precedents following Matter of Regina Metro Co., LLC, that it was necessary to prove all of the elements of common-law fraud in order to establish a fraudulent scheme to deregulate an apartment unit. But during the time period that the defendant allegedly engaged in the conduct at issue, which was prior to 2016, it could not possibly have relied upon the holdings from cases decided between 2020 and December 22, 2023 (cf. James Sq. Assoc. LP v Mullen, 21 NY3d 233, 248 [the plaintiffs had no warning and no opportunity at any time in 2008 to alter their behavior in anticipation of the impact of the 2009 amendments]).
Accordingly, the defendant failed to establish that the retroactive application of the standard for establishing fraudulent deregulation of an apartment unit as set forth in the chapter amendments results in unfairness or impairs its substantive rights (see Matter of Posillico v Southold Town Zoning Bd. of Appeals, 219 AD3d 885, 888). The defendant thus failed to establish that the retroactive application of the relevant provisions of the chapter amendments is unconstitutional. We therefore apply the standard set forth in the chapter amendments to this appeal.
VI. Application of the Chapter Amendments to this Appeal
Utilizing that standard, the plaintiffs contend that they demonstrated a "colorable claim" that the defendant engaged in a fraudulent scheme to deregulate a unit, and, therefore, this Court is required to determine "whether the [defendant] knowingly engaged in such fraudulent scheme after . . . consideration of the totality of the circumstances" (L 2024, ch 95, § 4). They further contend that the "totality of the circumstances" "indicate that such fraudulent scheme to deregulate a unit was committed" (id.). The plaintiffs contend that the defendant deregulated 27 apartment units prior to the First Department's March 5, 2009 decision in Roberts v Tishman Speyer Props., L.P. (62 AD3d 71, affd 13 NY3d 270), 7 apartment units between March 5, 2009, and October 22, 2009, when the Court of Appeals affirmed the decision in Roberts (see Roberts v Tishman Speyer Props., L.P., 13 NY3d 270), 8 apartment units in 2010, 12 apartment units in 2011, and 7 apartment units between 2012 and 2015. The plaintiffs claim that the defendant continued to deregulate apartment units even after it knew of the Court of Appeals' decision in Roberts, did not re-register apartment units until 2016, and re-registered apartment units at an improper preferential rent in order to raise the rent by percentages in excess of the increases permitted by the rent stabilization guidelines.
The defendant contends that even if the standard set forth in the chapter amendments is applied to this case, the plaintiffs failed to establish, prima facie, that the defendant knowingly engaged in a fraudulent scheme to deregulate an apartment unit after consideration of the totality of the circumstances. It further contends that its confusion, negligence, and/or ignorance of the law was not the equivalent of "knowingly" engaging in a fraudulent scheme to deregulate an apartment unit, that intent is usually an issue for the trier of fact, and that neither the mere increase in rent alone nor the failure to file annual registration statements is sufficient to prove a fraudulent scheme.
We agree with the defendant that the plaintiffs failed to meet their prima facie burden of establishing as a matter of law that the defendant engaged in a fraudulent scheme to deregulate an apartment unit under the totality of the circumstances (see L 2024, ch 95, § 4).
As is often recited, "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d 320, 324; see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853; Zuckerman v City of New York, 49 NY2d 557, 562; Chini v Chini, 189 AD3d 986, 988). Failure to make such a prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers (see Alvarez v Prospect Hosp., 68 NY2d at 324; Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853).
Under the chapter amendments, the plaintiffs must establish that the defendant knowingly engaged in a fraudulent scheme to deregulate an apartment unit under the totality of the circumstances (see L 2024, ch 95, § 4). Moreover, as the chapter amendments state "a unit" (id. [emphasis added]), the determination as to whether the defendant engaged in a fraudulent scheme to deregulate an apartment unit must be done with respect to each apartment unit that is the subject of this action (see id.; Aras v B-U Realty Corp., 221 AD3d at 12; see also Casey v Whitehouse Estates, Inc., 39 NY3d 1104, 1107 [remitting for an assessment of rent overcharges made for each apartment unit]). In looking at the totality of the circumstances, we should consider all relevant facts and all applicable statutory and regulatory law and controlling authorities (see L 2024, ch 95, § 4). [*8]It is also clear that the plaintiffs do not need to prove all of the elements of common-law fraud so long as the totality of the circumstances nonetheless indicate that a fraudulent scheme to deregulate an apartment unit was committed (see id.). With those principles in mind, we now turn to the "circumstances" set forth by the plaintiffs in their motion.
First, the plaintiffs contend that the defendant deregulated apartment units while receiving J-51 benefits prior to the First Department's March 5, 2009 decision in Roberts v Tishman Speyer Props., L.P. (62 AD3d 71), which was affirmed by the Court of Appeals on October 22, 2009 (see Roberts v Tishman Speyer Props., L.P., 13 NY3d 270). However, prior to Roberts, it is likely that many owners deregulated apartment units in good-faith reliance on the DHCR's guidelines, which had misinterpreted the applicable law (see Casey v Whitehouse Estates, Inc., 39 NY3d at 1107; Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 356)[FN3]. Although that does not preclude the possibility that even prior to Roberts some owners deregulated apartment units while receiving J-51 benefits as part of a fraudulent scheme (see Aras v B-U Realty Corp., 221 AD3d at 21 [Gesmer, J., dissenting]), standing alone, the deregulation of apartment units prior to Roberts is insufficient to establish a fraudulent scheme to deregulate an apartment unit (see generally Gridley v Turnbury Vil., LLC, 196 AD3d at 101; Matter of Park v New York State Div. of Hous. & Community Renewal, 150 AD3d 105, 115).
Nonetheless, here, as the plaintiffs point out, the defendant deregulated additional apartment units after the Court of Appeals' decision in Roberts, after the First Department's August 18, 2011 decision in Gersten v 56 7th Ave. LLC (88 AD3d 189) holding that Roberts applied retroactively, and after the Court of Appeals recognized in 2014 that Roberts applied retroactively (see Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d 382; Gersten v 56 7th Ave. LLC, 88 AD3d at 389-390). We agree with the plaintiffs that the defendant's continued deregulation of apartment units in the face of these court decisions provides evidence that could support a finding of a fraudulent scheme to deregulate at least some of the subject apartment units (see Nájera-Ordóñez v 260 Partners, L.P., 217 AD3d 580, 581 [as to any apartment units deregulated after Roberts and Gersten were decided, the plaintiffs alleged sufficient indicia of fraud]; Hess v EDR Assets LLC, 217 AD3d at 543 [holding that the defendants' failure to re-register all apartment units in the building as rent stabilized for years after the decisions in Roberts and Gersten could support a finding of fraud]; Montera v KMR Amsterdam LLC, 193 AD3d 102, 108 [the defendant deregulated an apartment unit after Roberts was decided and did not re-register with the DHCR, despite receiving J-51 benefits after Gersten applied Roberts retroactively]; Nolte v Bridgestone Assoc. LLC, 167 AD3d 498, 499 [the record showed that the defendant failed to promptly register apartment units as rent stabilized in March 2012 when the applicability of Roberts was clear]; Kreisler v B-U Realty Corp., 164 AD3d 1117, 1118 [rejecting the defendants' reliance on "pre-Roberts" framework to justify their actions, given that the wrongdoing occurred in 2010, after Roberts was decided (internal quotation marks omitted)]; see also Gridley v Turnbury Vil., LLC, 196 AD3d at 101 [noting that prior to 2016, and the DHCR's blanket notification to landlords of the change in the law, there were landlords involved in litigation over the failure to register apartment units as rent stabilized, who nevertheless persisted in that practice]).
Even so, the plaintiffs' submissions in support of their motion, which included the 2018 Mycak affidavit and the defendant's 2018 memorandum of law, failed to eliminate triable issues of fact as to whether, under the totality of the circumstances, the defendant "knowingly engaged" in a fraudulent scheme to deregulate an apartment unit (see L 2024, ch 95, § 4; see also Casey v Whitehouse Estates, Inc., 39 NY3d at 1107; Austin v 25 Grove St. LLC, 202 AD3d 429, 431; Gridley v Turnbury Vil., LLC, 196 AD3d at 102). In the 2018 Mycak affidavit, Mycak averred, inter alia, that this case involved apartment units thought to be deregulated prior to Roberts, that the defendant is a small, family-owned entity, that the defendant did not engage in a fraudulent scheme to deregulate any apartment units, that any alleged rent overcharges were not willful, and that the defendant registered all apartment units as rent stabilized in 2016 in response to a notice sent out by the DHCR. In the defendant's 2018 memorandum of law, the defendant asserted, among other [*9]things, that after Roberts, "landlords were confused as to the proper procedure for registering apartments, how far back to register them, and the proper method of adjusting the rents for apartments that were formerly thought to be deregulated prior to Roberts and were declared to be rent stabilized as a result of Roberts."
Contrary to the plaintiffs' contentions, these statements in the 2018 Mycak affidavit and the defendant's 2018 memorandum of law do not establish when the defendant learned about Roberts or that the defendant deregulated apartment units after it learned about Roberts. To the extent that the 2018 Mycak affidavit and the defendant's 2018 memorandum of law raise an inference that the defendant knew about the Roberts decision at some point prior to 2016 and continued to deregulate additional apartment units even after learning of the decision, they raise credibility issues that are inappropriate to decide on a motion for summary judgment (see e.g. Ferrante v American Lung Assn., 90 NY2d 623, 631 ["It is not the court's function on a motion for summary judgment to assess credibility"]; Schultheis v Arcate, 216 AD3d 1018, 1019; Brown v Kass, 91 AD3d 894, 895).[FN4]
In any event, even if the defendant did deregulate some apartment units after it knew or should have known about Roberts, that fact does not necessarily establish a fraudulent scheme to deregulate an apartment unit, although it is a "circumstance" that should be considered in that inquiry. "After Roberts there was understandable confusion regarding how the decision should be implemented, including whether Roberts should be given retroactive effect, and, if so, how that should be accomplished" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 357). As the First Department stated in Aras v B-U Realty Corp. (221 AD3d at 15), "[i]n a time riddled with questions concerning this topic, it cannot be held that a post-Roberts deregulation establishes fraud" (emphasis added). Although we acknowledge that under the standard set forth in the chapter amendments, the plaintiffs in this case, unlike the plaintiffs in Aras (id. at 11-12), are not required to prove all of the elements of common-law fraud (see L 2024, ch 95, § 4), the evidence the plaintiffs submitted in this case, which failed to eliminate triable issues of fact as to when the defendant learned of Roberts and whether its deregulation of the subject apartment units was a result of confusion, does not meet the plaintiffs' prima facie burden of establishing as a matter of law that the defendant knowingly engaged in a fraudulent scheme to deregulate an apartment unit under the totality of the circumstances. A good-faith mistake is not a "circumstance" that supports a finding of a fraudulent scheme to deregulate an apartment unit (see generally Sandlow v 305 Riverside Corp., 201 AD3d 418, 419; Montera v KMR Amsterdam LLC, 193 AD3d at 109).
In addition, the defendant's belated re-registration of the subject apartment units does not necessarily establish a fraudulent scheme to deregulate an apartment unit (see Aras v B-U Realty Corp., 221 AD3d at 15; Hess v EDR Assets LLC, 217 AD3d at 543; Tribbs v 326-338 E 100th LLC, 215 AD3d 480, 481; Ampim v 160 E. 48th St. Owner II LLC, 208 AD3d 1085, 1085-1086; Sandlow v 305 Riverside Corp., 201 AD3d at 419; Gridley v Turnbury Vil., LLC, 196 AD3d at 101; Zitman v Sutton LLC, 195 AD3d 483, 484; see also Matter of Gassama v New York State Dept. of Hous. & Community Renewal, 226 AD3d 589, 590 [the record supported the DHCR's conclusion that the landlord's failure to register a unit between 2014 and 2017 did not evince a fraudulent scheme to deregulate]). The 2023 act created a presumption of fraud "beginning October 1, 2011, [for] failing to register, as rent stabilized, any apartment in a building receiving J-51 or 421-a benefits" (L 2023, ch 760, part B, § 2[b]). However, the chapter amendments deleted the language that created that [*10]presumption (see L 2024, ch 95, § 4). By making this change with the chapter amendments, we presume that the Legislature does not intend that the failure to register an apartment unit as rent stabilized after October 1, 2011, standing alone, should indicate a fraudulent scheme to deregulate an apartment unit (see generally McKinney's Cons Laws of NY, Book 1, Statutes § 191; Matter of Stein, 131 AD2d 68, 72 ["When the Legislature amends a statute, it is presumed that the amendment was made to effect some purpose and make some change in the existing law"]). Further, in contrast to the situation in other cases, here, the defendant re-registered the subject apartment units prior to litigation (cf. Montera v KMR Amsterdam LLC, 193 AD3d at 108-109 [the defendant waited until 2018 to re-register an apartment unit, one year after the complaint in that case was filed]; Kreisler v B-U Realty Corp., 164 AD3d at 1117 [the defendants only addressed the issue when their conduct came to light in connection with an anonymous complaint, which triggered the involvement of an Assembly member]).
Moreover, even re-registering the subject apartment units at improper rents, which was contrary to the guidance offered by the DHCR and which allowed for higher percentages of rent increases, does not necessarily establish fraud (see generally Hess v EDR Assets LLC, 217 AD3d at 543 [although the plaintiff's evidence that the defendants, among other things, did not re-register all apartment units until September 2017, after three notices from the DHCR, could support a finding of fraud, the evidence submitted by the defendants in opposition to the plaintiffs' motion could support a finding that they had a reasonable good-faith belief that all apartment units in the building did not have to be re-registered, since they had received only prorated J-51 benefits based upon the number of rent-regulated apartment units at the time of the defendants' application and due to the confusingly drafted 2016 DHCR notice]).
In Casey v Whitehouse Estates, Inc., the Court of Appeals rejected the First Department's determination that the owners' re-registration of apartment units at the improper rent, not at the rents actually paid, was part of a fraudulent scheme to deregulate (see Casey v Whitehouse Estates, Inc., 197 AD3d 401, 403, revd 39 NY3d 1104), holding instead that the owners' deregulation of the apartment units was based on a misinterpretation of the law that did not constitute fraud (see 39 NY3d at 1107). The "[d]efendants' subsequent re-registering of the apartments occurred after the four-year lookback period, and [the] plaintiffs have failed to offer evidence that it somehow affected the reliability of the actual rent [the] plaintiffs paid on the base date" (id.). Although, unlike the instant case, it appears that all of the deregulations at issue in Casey occurred prior to the First Department's decision in Gersten (see Casey v Whitehouse Estates, Inc., 197 AD3d at 401), here, too, there is no indication that the defendant's re-registration of the subject apartment units in 2016 at the improper rent somehow affected the reliability of the rent calculated on the base date of August 27, 2014. Nonetheless, to the extent that the plaintiffs contend that the defendant's re-registration of the subject apartment units at an improper rent in disregard of the DHCR's guidelines is a "circumstance" that indicates that the defendant had been engaged in a fraudulent scheme to deregulate an apartment unit, the circumstances of the re-registration, including the defendant's reasons for disregarding the DHCR's guidelines, merely raise triable issues of fact.
It is certainly true that ignorance of the law does not constitute a defense for failure to comply with legal obligations (see Montera v KMR Amsterdam LLC, 193 AD3d at 107). Thus, as discussed above, regardless of the defendant's ignorance or confusion about the law, there is no dispute that the defendant did improperly deregulate rent-stabilized apartment units while receiving J-51 benefits and, as set forth herein, the defendant is liable for that conduct (see Corcoran v Narrows Bayview Co., LLC, 183 AD3d at 511). The primary issue on this appeal is not whether the defendant is liable for its improper conduct (deregulating rent-stabilized apartment units), but how any damages for that conduct should be calculated (see Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 361 ["under pre-HSTPA law, the four-year lookback rule and standard method of calculating legal regulated rent govern in Roberts overcharge cases, absent fraud" (emphasis added)]; Simpson v 16-26 E. 105, LLC, 176 AD3d 418 [the default formula is not a penalty but a method by which to calculate compensatory damages]). For the fraud exception to apply under the standard set forth in the chapter amendments, the plaintiffs must establish that the defendant "knowingly engaged" in a fraudulent scheme to deregulate an apartment unit (L 2024, ch 95, § 4 [emphasis added]). Mere ignorance of the law—or even good-faith confusion about the law—cannot be sufficient to equate with knowingly engaging in a fraudulent scheme.
Nevertheless, we do acknowledge that there are circumstances where a defendant's [*11]willful ignorance of the law may indicate a fraudulent scheme to deregulate an apartment unit (see Hess v EDR Assets LLC, 217 AD3d at 543; Montera v KMR Amsterdam LLC, 193 AD3d at 107 [Matter of Regina Metro Co., LLC did not give owners in post-Roberts/Gersten cases "carte blanche" to willfully disregard the law by failing to re-register improperly deregulated apartment units]). This may be more likely where the defendant is a sophisticated property owner (see Montera v KMR Amsterdam LLC, 193 AD3d at 109), but, at least on this record, the plaintiffs have not established that the defendant in this case was either sophisticated or willfully ignorant.
In sum, on this record, there are triable issues of fact as to whether the defendant knowingly engaged in a fraudulent scheme to deregulate an apartment unit under the totality of the circumstances (see generally Austin v 25 Grove St. LLC, 202 AD3d at 431). Accordingly, the plaintiffs failed to meet their prima facie burden of establishing that the default formula should be used in determining the legal regulated rent for the subject apartment units or for calculating the base date of the rent for any overcharges. The plaintiffs' failure to meet their prima facie burden on these issues requires denial of that branch of their motion which was to direct the application of the default formula to calculate, among other things, the legal regulated rents of the subject apartment units and any rent overcharges, regardless of the sufficiency of the defendant's opposition papers on these issues (see Alvarez v Prospect Hosp., 68 NY2d at 324; Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853).
Still, we emphasize that the plaintiffs ultimately may be able to prove that the defendant knowingly engaged in a fraudulent scheme to deregulate an apartment unit under the totality of the circumstances (see generally Nájera-Ordóñez v 260 Partners, L.P., 217 AD3d at 581; Hess v EDR Assets LLC, 217 AD3d at 543; Austin v 25 Grove St. LLC, 202 AD3d at 431). We further emphasize that to do so, the plaintiffs need not prove all of the elements of common-law fraud if the totality of the circumstances nevertheless indicate a fraudulent scheme to deregulate an apartment unit. Thus, we do not hold that the Supreme Court is prohibited from eventually using the default formula to calculate damages for any rent overcharges with respect to some or all of the subject apartment units. If the plaintiffs eventually set forth sufficient evidence to establish that the defendant engaged in a fraudulent scheme to deregulate an apartment unit, then the legal regulated rent and the rent on the base date for each of those apartment units must be determined by using the default formula (see 435 Cent. Park W. Tenant Assn. v Park Front Apts., LLC, 183 AD3d 509, 511). However, with respect to any apartment units for which the plaintiffs fail to establish that the defendant engaged in a fraudulent scheme to deregulate those apartment units, the default formula should not be used (see Corcoran v Narrows Bayview Co., LLC, 183 AD3d at 511-512).
Finally, under the circumstances of this case, including the manner in which the attorneys' fees issue has been litigated, the question of whether attorneys' fees should be awarded should be determined with the resolution of the rent overcharge claim (see Austin v 25 Grove St. LLC, 202 AD3d at 431; see also CPLR 909; Louisiana Mun. Employees' Retirement Sys. v Cablevision Sys. Corp., 74 AD3d 1291, 1293; cf. Sandlow v 305 Riverside Corp., 201 AD3d at 421). Accordingly, that branch of the plaintiffs' motion which was for summary judgment on the cause of action for an award of attorneys' fees is denied without regard to the sufficiency of the defendant's opposition papers on that issue (see Alvarez v Prospect Hosp., 68 NY2d at 324; Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853).
VII. Conclusion
The standard as set forth in the chapter amendments for establishing a fraudulent scheme to deregulate an apartment unit applies to this case, even though it was commenced before the effective date of the chapter amendments. Furthermore, the defendant failed to establish that it is unconstitutional to apply that standard. Nevertheless, applying the standard set forth in the chapter amendments, the plaintiffs failed to establish, prima facie, that the defendant engaged in a fraudulent scheme to deregulate an apartment unit such that the default formula should be used to set the legal regulated rent or to calculate rent overcharges, if any.
Accordingly, the order is modified, on the law, (1) by deleting the provision thereof granting those branches of the plaintiffs' motion which were for summary judgment on the cause of action for an award of attorneys' fees, to direct the application of the default formula for calculating the legal regulated rent of the subject apartment units and for any rent overcharges, and to refer the matter to a special referee to calculate, among other things, the legal regulated rents under the default formula, any rent overcharges, and attorneys' fees, and substituting therefor a provision denying [*12]those branches of the motion, and (2) by deleting the provision thereof referring the matter to a special referee to calculate, inter alia, the legal regulated rents under the default formula, any rent overcharges, and attorneys' fees; as so modified, the order is affirmed insofar as appealed from.
CHAMBERS, DOWLING and VOUTSINAS, JJ., concur.
ORDERED that the order is modified, on the law, (1) by deleting the provision thereof granting those branches of the plaintiffs' motion which were for summary judgment on the cause of action for an award of attorneys' fees, to direct application of the default formula for calculating the legal regulated rent of the subject apartment units and for any rent overcharges, and to refer the matter to a special referee to calculate, among other things, the legal regulated rents under the default formula, any rent overcharges, and attorneys' fees, and substituting therefor a provision denying those branches of the motion, and (2) by deleting the provision thereof referring the matter to a special referee to calculate, inter alia, the legal regulated rents under the default formula, any rent overcharges, and attorneys' fees; as so modified, the order is affirmed insofar as appealed from, with costs to the defendant.
ENTER:
Darrell M. Joseph
Clerk of the Court

Footnotes

Footnote 1: The class did not include any tenants who vacated before August 27, 2014, or any tenants whose occupancy in any such apartment unit commenced after the J-51 tax benefits to the defendant ended.

Footnote 2: The defendant served a copy of its supplemental brief, which raised the constitutional challenge, upon the Attorney General. 

Footnote 3: For purposes of this appeal, it is unnecessary for this Court to specifically address any deregulations that occurred between the First Department's decision in Roberts and the Court of Appeals' decision in that case.

Footnote 4: In light of our determination that the plaintiffs failed to meet their prima facie burden, we do not consider the sufficiency of the defendant's opposition papers, including the 2020 Mycak affidavit (see generally Alvarez v Prospect Hosp., 68 NY2d at 324; Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853). Nonetheless, even if we were to consider that affidavit, it would not change our analysis. In the 2020 Mycak affidavit, Myack responded to the plaintiffs' arguments regarding the confusion with how to deal with pre-Roberts deregulated apartment units and averred, among other things, that he was "not a lawyer and [he] was unsure how to proceed, so [he] waited for DHCR to provide some guidance, which was not provided until January 2016, when DHCR sent out its J-51 Initiative FAQs." Contrary to the plaintiffs' contention, these statements do not establish when Mycak learned of Roberts or that the defendant deregulated the subject apartment units after learning about Roberts.