**Stankiewicz v Bristol E. Co.**

2025 NY Slip Op 30786(U)

March 10, 2025

Supreme Court, New York County

Docket Number: Index No. 155953/2017

Judge: James d'Auguste

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:     Hon. James E. d'Auguste                          PART 55

*Justice*

-------------------------------------------------------------------------X

CARLY STANKIEWICZ, JANA HERMAN, ALLYSON
GERSTEIN, JESSICA SLOAN, SKIP GRANGER
SWERDLING, TIMOTHY SULLIVAN, TIAHANNA GIERL
SULLIVAN,

                                Plaintiffs,

                    - v -

BRISTOL EAST COMPANY,

                         Defendant.

-------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 155953/2017 |
| MOTION DATE | 10/16/2018 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 96, 97; (Motion 002) 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 98, 99, 100, 101, 103, 105, 106, 107, 108, 132, 133, 134, 141, 142, 143

were read on this motion to/for                    SUMMARY JUDGMENT                    .

Upon the foregoing documents, the motion is decided as follows:

## PROCEDURAL HISTORY

In this residential landlord-tenant action, plaintiffs initially moved for an order granting leave to amend their complaint to name additional plaintiffs (Motion Sequence Number 001). Defendant opposed and cross-moved, pursuant to CPLR 3212, for an order granting summary judgment dismissing the complaint, granting a money judgment for alleged rent arrears, and for attorney's fees, or, in the alternative, for monthly use-and-occupancy *pendente lite*.

While the motions were pending, plaintiffs filed a motion for summary judgment on the complaint (Motion Sequence Number 002). On February 10, 2021, this Court so-ordered an order settled on notice, granting plaintiff's motion to amend the complaint (NYSCEF Doc No. 125). The order did not resolve defendant's cross-motion, which is currently pending before

155953/2017  STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 1 of 19

[* 1]

This Court now considers defendant's and plaintiffs' competing motions for summary judgment as set forth below.

## BACKGROUND

Plaintiffs are current and former tenants of a residential apartment building located at 310 East 65th Street in the County, City, and State of New York (the building) as follows: Carly Stankiewicz (apartment 5F), Jana Herman (apartment 11A), Allyson Gerstein (apartment 8G), Jesssica Sloan (apartment 4A), Skip Granger Swerdling (apartment 3C), and Tiahanna Gierl Sullivan and Timmothy Sullivan (apartment 6G) (NYSCEF Doc No. 127, amended complaint, ¶¶ 8-13).[1] Defendant Bristol East Company (Bristol) is the limited partnership that owns the building and is plaintiffs' landlord (*id.* at ¶ 14).

Beginning in 1986, and renewing in 1997, Bristol received benefits under the J-51 tax abatement program (NYSCEF Doc No. 16, Chadrjian aff, ¶ 13; NYSCEF Doc No. 127, amended complaint, ¶ 31) authorized by Real Property Tax Law § 489 (RPTL 489). The J-51 program permits "property owners who complete eligible projects to receive tax exemptions and/or abatements that continue for a period of years" (*Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 280 [2009]). As a condition of the J-51 program, owners must maintain apartments in participating buildings as rent-regulated units subject to the Rent Stabilization Law (RSL) and the Rent Stabilization Code (RSC)[2] (*see id.*).

In 1996, while defendants received J-51 benefits, DHCR issued an opinion letter informing owners that participation in the J-51 program did not preclude lawful deregulation of those rent-stabilized apartments that had met certain high-rent or high-income thresholds and had

---

[1] At oral argument on June 4, 2024, the parties agreed that at least one, but as many as three, of the plaintiffs no longer reside at the building (NYSCEF Doc No. 143, tr at 28, ¶¶ 8-13).
[2] The Rent Stabilization Code is promulgated by the DHCR pursuant to the Rent Stabilization Law (RSC § 2520.1) and is construed to carry out the intent of the Rent Stabilization Law (RSC § 2520.3).

**155953/2017 STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY**
**Motion No. 002**

**Page 2 of 19**

2 of 19

been part of the rent-stabilization scheme prior to their enrollment in the J-51 program (*id.* at 281). In other words, the opinion letter informed owners that the only apartments that could not be deregulated while receiving J-51 benefits were apartments that had become rent-stabilized solely based on the building's participation in the J-51 program (*id.*).

In 2009, the Court of Appeals held in *Roberts* that no apartment, regardless of its rent-regulatory status at the time of enrollment in the J-51 program, could be deregulated while receiving tax exemptions pursuant to the program (*Roberts*, 13 NY3d 270 at 286). In 2011, in *Gersten v 56 7th Ave. LLC*, 88 AD3d 189 [1st Dept 2011], *appeal withdrawn* 18 NY3d 954 [2012], the Appellate Division, First Department further clarified that the holding in *Roberts* "must be applied retroactively" (*id.* at 298). In January 2016, the New York State Governor's office announced an initiative to return illegally deregulated apartments in buildings receiving J-51 benefits to rent regulation (NYSCEF Doc No. 16, Chadrjian aff, ¶ 25; NYSCEF Doc No. 30, exhibit N; NYSCEF Doc No. 61, plaintiffs' counsel's affirmation, ¶ 11, n 12). Several months later, DHCR published a guide (DHCR FAQ), responding to "frequently asked questions" concerning DHCR's J-51 Rent Registration Initiative to return improperly deregulated apartments to rent regulation in buildings receiving J-51 benefits (NYSCEF Doc No. 16, Chadrjian aff, ¶ 25; NYSCEF Doc No. ¶ 31, exhibit O).

Bristol deregulated the apartments at the core of this proceeding in the years between the issuance of the 1996 DHCR opinion letter and the decisions in *Roberts* and *Gersten* (NYSCEF Doc No. 16, Chadrjian aff, ¶¶ 14, 17, 20, & 41; NYSCEF Doc No. 19, exhibit C). Bristol alleges that the apartments had reached the $2,000 high rent threshold pursuant to the version of RSL § 26-504.2 (repealed by L 2019, ch 36, pt D, § 4) in effect at the time (NYSCEF Doc No. 16, Chadrjian aff, ¶¶ 15, 18, 21, & 41; NYSCEF Doc No. 19, Exhibit C). Bristol blames its failure to

155953/2017  STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 3 of 19

re-regulate the apartments post-*Roberts* on its erroneous belief that the apartments were properly deregulated according to the laws and rules in effect at the time and on DHCR's lack of guidance (NYSCEF Doc No. 16, Chadrjian aff, ¶ 24).

According to Bristol, after receiving DHCR's guidance in 2016, it "embarked upon a Building wide project of registering with DHCR all of the apartments in the Building, including Plaintiff's apartments" (*id.* at ¶ 26). Bristol contends that it registered plaintiffs' apartments with DHCR as rent-stabilized for 2016; sent letters to plaintiffs dated April 1, 2017, "advising them of their rent-stabilized status, their correct legal rent . . ., [and] the amount of a rent credit each would receive"; and included with the letters refund checks for security deposit overpayments, as calculated by Bristol using the formula set forth in the DHCR FAQ (*id.* at ¶¶ 26, 28 & 39; NYSCEF Doc Nos. 33, exhibit Q; 73, exhibit B; 77, exhibit F; 80, exhibit I; 83, exhibit L; 88, exhibit Q; & 92, exhibit U).

Despite Bristol's alleged efforts to comply with *Roberts* and the DHCR FAQ, plaintiffs commenced the instant action on June 30, 2017 (NYSCEF Doc No. 1). According to plaintiffs, for years, the apartments at issue in the instant proceeding were improperly registered with the DHCR as exempt from the RSL, when, in fact, they have always been subject to the RSL (NYSCEF Doc No. 61, affirmation of plaintiffs' counsel, ¶ 11; NYSCEF Doc No. 127, amended complaint, ¶¶ 22-28, & 30). Plaintiffs allege that Bristol engaged in a fraudulent scheme to deregulate the apartments and had done so as part of a systemic, building-wide scheme to defraud the building tenants (NYSCEF Doc No. 61, affirmation of plaintiffs' counsel, ¶¶ 10-11; NYSCEF Doc No. 127, amended complaint, ¶¶ 34-35). According to plaintiffs, as part of this scheme and despite receiving J-51 benefits, Bristol took rent increases in excess of those permitted by the Rent Guidelines Board (RGB) to quickly reach high rent threshold levels in

155953/2017   STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 4 of 19

4 of 19

[* 4]

effect at the time in order to unlawfully deregulate the rent-stabilized apartments in the building (NYSCEF Doc No. 127, amended complaint, ¶ 37). Plaintiffs allege that Bristol knowingly and willfully charged rents in excess of the maximum permissible amounts, overcharging plaintiffs and denying them the benefits and protections provided by the RSL (*id.* at 33).

The amended complaint sets forth causes of action for: (1) a declaratory judgment a) declaring plaintiffs' apartments rent-stabilized, b) establishing the legal rents for the apartments, and c) enjoining Bristol from terminating plaintiffs' tenancies or starting eviction proceedings pending the outcome of the instant action; (2) rent overcharge and treble damages; and (3) attorney's fees (NYSCEF Doc No. 127, amended complaint, ¶ 49).

There have been several changes in the law during the pendency of this proceeding, and the Court, at various times, has directed the parties to submit supplemental memoranda on points of law implicated in this case (NYSCEF Doc Nos. 103-104, 106-108, 132-134, 141-142). The parties have had ample opportunity to brief the issues. Their respective motions are now ready for disposition.

## DISCUSSION

Defendant's motion

In its motion, Bristol argues that it failed to reregulate the apartments until the 2016 DHCR FAQ because the Court of Appeals in *Roberts* did not address several issues arising from its holding, including retroactivity. Bristol contends that it, like other owners, lacked guidance on how to handle previously deregulated apartments in buildings receiving J-51 tax exemptions. In his affidavit, a Bristol partner, John Chadrjian, avers that Bristol is not a large real estate company and does not have a team of attorneys to advise it on retainer (NYSCEF Doc No. 16, Chadrjian aff, ¶ 23). In this regard, Bristol claims that "[i]t is a small family business, managed

155953/2017  STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 5 of 19

5 of 19

[* 5]

by a family owned managing agent which manages this and another building in Manhattan which, combined, consist of some 212 apartments" (*id.*). Thus, Bristol claims that its failure to reregulate previously deregulated apartments was due to confusion caused by DHCR's failure to issue any guidance until 2016.

Bristol asserts that once DHCR issued its FAQ in 2016, Bristol followed the guidelines therein and registered the building's apartments with the DHCR as rent-stabilized. Bristol claims that, in accordance with the FAQ, it did not retroactively register the deregulated apartments but recalculated the apartments' rents using the formula in the FAQ. Bristol then refunded or credited plaintiffs for overpayments over the prior four years and offered them rent-stabilized leases. For this reason, Bristol asserts that plaintiffs' first cause of action is moot because Bristol has already recognized their tenancies as subject to RSL and RSC, has registered them as such, and has offered plaintiffs rent-stabilized leases as required by law.

Bristol also insists that it properly calculated the legal rents pursuant to DHCR's guidance and credited plaintiffs accordingly; thus, Bristol urges the Court to dismiss plaintiffs' second cause of action for overcharge because all overpayments have been remitted to plaintiffs. Bristol argues that it did not fraudulently overcharge plaintiffs because it lacked willfulness when it deregulated their apartments in reliance on existing DHCR regulations at the time. Bristol additionally insists that mere bumps in the rental histories are not sufficient to establish a fraudulent scheme to deregulate. Bristol argues that, here, it has disclosed entire rent and lease histories for each plaintiff and has firmly established that the apartments at issue were lawfully deregulated pre-*Roberts* applying all available increases, including vacancy and longevity increases, RGB sanctioned increases, and Individual Apartment Improvement (IAI) increases to reach the requisite thresholds under the RSL and the RSC. Bristol insists that it has

155953/2017  STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 6 of 19

6 of 19

[* 6]

produced records sufficient to support each IAI increase in the subject apartments.

Bristol objects to any potential rent freeze since it was entitled to lawful increases pursuant to DHCR's FAQ; its error in deregulating the apartments was not willful but based on its reliance on DHCR's opinion letter; and plaintiffs have not met the conditions under the RSC for enforcing a rent-freeze in this case. Bristol additionally objects to the imposition of treble damages because, according to Bristol, the courts have consistently held that in pre-*Roberts* J-51 deregulation cases, it is virtually impossible to make a finding of fraud to support the trebling of damages.

Additionally, in its subsequent memoranda in further support of its motion and in opposition to plaintiffs' motion, defendants vehemently oppose the imposition of the default formula for rent setting, which would set the base date rent for the purposes of calculating the legal rents at the lowest rental amount paid for a comparable rent-stabilized apartment in the building on the base date. In support, Bristol relies on several decisions, including *Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d 332 [2020] and *Casey v Whitehouse Estates, Inc.*, 39 NY3d 1104 [2023]. Bristol argues that the Court of Appeals in *Regina* and *Casey* correctly held that there could be no finding of fraudulent intent in circumstances presented in the instant case because owners who deregulated apartments in buildings receiving J-51 benefits did so based on a misinterpretation of the law.

Finally, Bristol insists that in the event its motion is denied, it is entitled to an award of use and occupancy *pendente lite* in the amount calculated by Bristol and retroactive to the commencement of this proceeding, without prejudice to adjustment, if the rent calculations should eventually be found erroneous.

In opposition to plaintiffs' summary judgment motion, Bristol reiterates that it never

**155953/2017   STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY**
**Motion No.  002**

**Page 7 of 19**

7 of 19

[* 7]

intended to fraudulently deregulate plaintiffs' apartments and that there was no deliberate scheme on its part. Bristol continues to point to the confusion surrounding the *Roberts* decision and DHCR's failure to issue guidance on the matter. Bristol also restates its prior argument that in the pre-*Roberts* line of cases and under similar circumstances, the courts have consistently held that a finding of fraud is virtually impossible. Bristol cites its transparency after receiving the DHCR FAQ and in submitting registration histories, copies of leases, and other documents to this Court as evidence that it has not acted in bad faith. Bristol further objects to plaintiffs' characterization of their legal rents as unascertainable, where the apartments had rental histories prior to deregulation, and Bristol's analysis of vacancy increases, IAI increases, and longevity increases allegedly demonstrates that the legal rent can be calculated. Bristol insists that its rental calculations and remittance of overcharges were based on the DHCR FAQ and that plaintiffs are not entitled to the draconian penalties they seek since Bristol has not committed the kind of egregious acts the default formula and the trebling of damages are intended to address.

Plaintiffs' Motion

Plaintiffs argue that Bristol's actions support a finding of a fraudulent scheme to deregulate and justifies the use of the default formula for rent-setting. As such, plaintiffs insist that Bristol unlawfully deregulated their apartments and offered them market-rate leases in contravention of the requirements of the J-51 tax benefits program. Plaintiffs contend that Bristol was aware of the *Roberts* decision but continued to provide tenants with market-rate leases as recently as September 2016, when it offered plaintiff Herman a market-rate lease extension.

Further, plaintiffs argue that Bristol's alleged misconduct was building-wide and have provided a chart purporting to demonstrate, among other things, that in 2010, after *Roberts*, only 31% of the apartments were registered with DHCR as rent-stabilized and that as late as 2016,

155953/2017   STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No.  002

Page 8 of 19

prior to Bristol's filing of the amended registrations, only 32.2% of the building's apartments continued to be registered as rent-stabilized (NYSCEF Doc No. 61, plaintiffs' counsels' affirmation, ¶ 10). Plaintiffs contend that in examining the DHCR registration histories, which both sides attached to their motions, it appears that Bristol deregulated an additional nine apartments after *Roberts*. Plaintiffs insist that even under the pre-*Roberts* rubric, Bristol should have reregulated all of the building's apartments upon each re-enrollment in the J-51 program.

Plaintiffs argue that based on the foregoing, they have put forward a colorable claim of fraud within the meaning of *Matter of Grimm v State Div. of Hous. & Community Renewal Off. of Rent Admin.*, 15 NY3d 358 [2010] and demonstrated that there is a substantial indicia of fraud in the instant case. Moreover, plaintiffs argue that under *Grimm*, an overcharge claim does not require a finding of intent. Plaintiffs underscore that, here, Bristol has conceded overcharging plaintiffs. Plaintiffs insist that, combined with the pattern of deregulation in the building, there is sufficient indicia of fraud here to justify the setting of rent utilizing the default formula authorized by the RSC (9 NYCRR § 2522.6 [b]).

Plaintiffs further insist that the default formula can be used where the rent on the base date simply could not be determined. Plaintiffs argue that because their rent was not registered with DHCR on the base date, the rent on the base date cannot be determined here; thus, the default formula should apply. Plaintiffs also ask for treble damages for the two years prior to the complaint, plus interest, as permitted by law, since Bristol's overcharge was allegedly willful.

Moreover, plaintiffs assert that they are entitled to a rent freeze pursuant to the default formula because Bristol admits to the overcharges and because the rents Bristol registered were belated and improper. Plaintiffs ask for the Court to freeze their rents at the lowest comparable apartment rates of between $735.45 and $737.76.

155953/2017  STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 9 of 19

9 of 19

Plaintiffs maintain that Bristol cannot rely on its alleged ignorance of the law post-*Roberts*, when seven years passed after the decision in *Roberts* before Bristol finally reregulated the apartments in the building. According to plaintiffs, the caselaw does not sanction Bristol's reliance on a pre-*Roberts* framework, where it was still offering market-rate leases well after 2010. Plaintiffs insist that Bristol's claim that it misunderstood the finding in *Roberts* is unconvincing, especially since the finding in *Gersten* solidified *Roberts'* retroactivity. Plaintiffs maintain that even if Bristol was ignorant of the law because of a misunderstanding caused by the 1996 DHCR opinion letter, its compliance with the 2016 DHCR FAQ was still unsatisfactory where Bristol took no action to reregulate the apartments and inform the tenants until April 2017.

In opposing Bristol's summary judgment motion, plaintiffs reiterate that Bristol was aware of the *Roberts* decision but continued to offer them market rate leases well into 2016. Plaintiffs object to Bristol's reliance on the rent registration history going back as far as 13 years before the commencement of the proceeding to justify large increases in rent by claiming they were based on IAI's and vacancies, while, but for a finding of fraud, the four-year look-back rule would shield Bristol from an examination of the legality of this rent. Plaintiffs claim that Bristol has opened the door to an examination of its rental history past the four-year lookback period preceding the instant case. According to plaintiffs, the rental history contains additional indicia of fraud that cannot be determined on a summary judgment motion. Following this line of reasoning, plaintiffs cast doubt on what they deem as scant evidence of IAI's supported by the affiant's bald allegations.

Plaintiffs additionally object to Bristol's characterization of their declaratory judgment request as moot and insist that it is not enough that defendant has belatedly offered them rent stabilized leases. Plaintiffs seek a declaration retroactive to the inception of their tenancies.

155953/2017  STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 10 of 19

10 of 19

Finally, plaintiffs agree to pay use and occupancy *pendente lite*, as long as it is set at amounts using the default formula.

### Standard for Summary Judgment

A party moving for summary judgment has the initial burden of establishing a prima facie showing that it is entitled to summary judgment as a matter of law, providing sufficient evidence that no material issues of triable fact exist (*Trustees of Columbia Univ. in the City of N.Y. v D'Agostino Supermarkets, Inc.*, 36 NY3d 69, 74 [2020]; *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Once this burden has been met, the burden shifts to the opposing party to

> "produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which [it] rests [its] claim or [to] demonstrate acceptable excuse for [its] failure to meet the requirement of tender in admissible form; mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *De Lourdes Torres v Jones*, 26 NY3d 742, 763 [2016]).

The function of the summary judgment procedure is "issue-finding," not "issue-determination" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 505 [2012] [internal quotation marks and citation omitted]). When considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the non-moving party" (*Jacobsen v New York City Health & Hosps. Corp.*, 22 NY3d 824, 833 [2014] [internal quotation marks and citation omitted]; *De Lourdes Torres*, 26 NY3d at 763). However, under CPLR 3212 (f), "[s]hould it appear from affidavits submitted in opposition to the motion that facts essential to justify opposition may exist but cannot then be stated, the Court may deny the motion or may order a continuance to permit affidavits to be obtained or disclosure to be had and may make such other order as may be just."

### Analysis of the J-51 overcharge framework

At the outset, this case predates the enactment of the Housing Stability and Tenant Protection Act of 2019 (HSTPA) (L 2019, ch 36). Prior to the passage of the HSTPA, former

155953/2017 STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 11 of 19

CPLR 213-a and RSL § 26-516 (a) (2) "provided for a strict 'lookback' period, permitting recovery of rent overcharges four years prior to the filing of a tenant's complaint" (*Aras v B-U Realty Corp.*, 221 AD3d 5, 8 [1st Dept 2023]). For this reason, plaintiffs' overcharge claims are subject to "the four-year lookback rule and standard method of calculating legal regulated rent" absent a finding of fraud (*Matter of Regina Metro. Co., LLC*, 35 NY3d at 361).

Since the motions before this Court were filed, there have been several changes to the legal framework that have, at various times, altered the analysis in overcharge cases, including in cases implicating the J-51 program. As discussed above, in 2019, the HSTPA, among other things, extended the statute of limitations for overcharge claims from four years to six and required DHCR and the courts to examine the available rent history as far back as necessary to investigate overcharge claims and determine legal regulated rents (*id.* at 364). However, the Court in *Regina* barred the retroactive application of the HSTPA (*id.* at 381-383).

The cases the Court of Appeals considered in *Regina* involved apartments deregulated in reliance on the 1996 DHCR opinion letter, where the tenants moved in before the Court issued its opinion in *Roberts*. As relevant here, the *Regina* Court restated the rule applicable in pre-HSTPA cases that a "review of rental history outside the four-year lookback period was permitted only in the limited category of cases where the tenant produced evidence of a fraudulent scheme to deregulate and, even then, solely to ascertain whether fraud occurred" (*id.* at 354). As the Court articulated, in fraud cases, it "sanctioned the use of the default formula to set the base date. Otherwise, for overcharge calculation purposes, the base date rent was the rent actually charged on the base date (four years prior to initiation of the claim)" (*id.* at 355-356) and owners were allowed to add legally permissible increases under the RSL to the base date rent to determine the overcharge amount (*id.*). In *Regina*, the Court defined "fraud" as common-law

155953/2017  STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 12 of 19

[* 12]                                                          12 of 19

fraud, requiring a showing of "evidence [of] a representation of material fact, falsity, scienter, reliance and injury ... [i]n this context, willfulness means 'consciously and knowingly charg[ing] ... improper rent'" (*id.* at 356, n 7 [citations omitted]). The *Regina* Court also found that:

> "[I]n these *Roberts* cases, the owners removed apartments from stabilization consistent with agency guidance. Deregulation of the apartments during receipt of J–51 benefits was not based on a fraudulent misstatement of fact but on a misinterpretation of the law – significantly, one that DHCR itself adopted and included in its regulations. As we observed in *Borden v. 400 E. 55th St. Assoc., L.P.,* a finding of willfulness "is generally not applicable to cases arising from the aftermath of *Roberts*" (24 N.Y.3d 382, 389, 998 N.Y.S.2d 729, 23 N.E.3d 997 [2014]). Because conduct cannot be fraudulent without being willful, it follows that the fraud exception to the lookback rule is generally inapplicable to *Roberts* overcharge claims." (*Matter* of *Regina Metro. Co., LLC*, 35 NY3d at 356.)

After *Regina*, the First Department continued to apply the common-law definition of fraud to overcharge cases. In *Burrows v 75-25 153rd St., LLC*, 215 AD3d 105, 109 [1st Dept 2023], *lv granted,* 41 NY3d 906 [2024], citing *Regina*, the Court held that tenants could not prove a fraudulent scheme to deregulate their apartments, where reasonable reliance was still an element of fraud.

In *Aras v B-U Realty Corp.*, 221 AD3d 5 [1st Dept 2023], a case implicating the J-51 benefits program and alleged overcharges, the First Department held that

> "Court of Appeals precedent consistently instructs us to strictly enforce the four-year lookback period which, like any statute of limitations, serves to cut off claims. . . . Speculation of fraud will not suffice to expand the lookback period or invoke the default formula. All elements of fraud must be established" (*id.* at 11 [citation omitted]).

In *Aras*, the First Department found that plaintiffs did not plead, nor prove, the elements of fraud for a number of reasons, including that "[t]he law is now settled that a building-wide scheme is insufficient to support fraud on a case-by-case-basis" (*id.* at 12 [citation omitted]). Thus, even where, as in *Aras*, the owners only reregulated apartments in 2014 after receiving a DHCR letter directing them to do so and where some of the apartments were deregulated as late

155953/2017  STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 13 of 19

as 2013, the Court held that plaintiffs did not establish fraud as a matter of law (*id.* at 14).

The Chapter Amendments

Shortly after the *Aras* decision, on March 1, 2024, Governor Kathy Hochul signed into law Senate Bill 8011/Assembly Bill 8506 (the Chapter Amendments), which amended Section 2 and Section 3 of Part B of Chapter 760 of the Laws of 2023 (*Gomes v Vermyck, LLC*, -- AD3d --, 2025 NY Slip Op 00849, *6 [2d Dept 2025]; *Viohl v Chelsea W26 LLC*, 2024 NY Slip Op 34528[U], **4 [Sup Ct, NY County 2024]; *208 Evergreen LLC v Gomez*, 84 Misc 3d 756, 760, *7 [Civ Ct, Kings County 2024]). As relevant here, the chapter amendments provide:

> "§ 2–a. When a colorable claim that an owner has engaged in a fraudulent scheme to deregulate a unit is properly raised as part of a proceeding before a court of competent jurisdiction ... a court of competent jurisdiction ... shall issue a determination as to whether the owner *knowingly* engaged in such fraudulent scheme *after a consideration of the totality of the circumstances*. In making such determination, the court or the [DHCR] shall consider all of the relevant facts and all applicable statutory and regulatory law and controlling authorities, provided that *there need not be a finding that all of the elements of common law fraud, including evidence of a misrepresentation of material fact, falsity, scienter, reliance and injury, were satisfied in order to make a determination that a fraudulent scheme to deregulate a unit was committed if the totality of the circumstances nonetheless indicate that such fraudulent scheme to deregulate a unit was committed. . . .*
>
> [The chapter amendments] shall take effect immediately and shall apply to any action or proceeding in any court . . . on the effective date of this act" (L 2024, ch 95, §§ 4, 5 [emphasis added]).

The Chapter Amendments manifest "the Legislature's intent to overrule and vacate the *Burrows* holding and to return to the 'totality of the circumstances' standard that had been enunciated in copious prior Court of Appeals jurisprudence" (*Viohl*, 2024 NY Slip Op 34528[U], **5; *see Gomes*, 2025 NY Slip Op 00849 at **8-9) and are to be applied retroactively (*Gomes, NY Slip Op 00849 at *10; *see Viohl*, 2024 NY Slip Op 34528[U], **5).

Applying the legal standards indicated above to the circumstances presented in this case, the Court finds that neither party has demonstrated its entitlement to judgment as a matter of law.

155953/2017  STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 14 of 19

Bristol concedes it overcharged plaintiffs in its mistaken reliance on the 1996 DHCR opinion letter but insists it has remedied the error by recognizing plaintiffs to be rent-stabilized, offering them rent stabilized leases, and crediting the amounts due to them under the rules and laws that were applicable at the time. There is no dispute that Bristol is liable for improperly deregulating the apartments while receiving tax exemptions pursuant to the J-51 benefits program. The issue herein "is not whether the defendant is liable for its improper conduct (deregulating rent-stabilized apartment units), but how any damages for that conduct should be calculated" (*Gomes*, 2025 NY Slip Op 00849 at *14 [citations omitted]). Here, "willful ignorance of the law may indicate a fraudulent scheme to deregulate an apartment unit" (*id.*; *Hess v EDR Assets LLC*, 217 AD3d 542, 543 [1st Dept 2023]), which carries a higher sanction, but plaintiffs have not established, as a matter of law, that defendant knowingly engaged in such a scheme.

In the instant case, at this pre-discovery stage of litigation, material issues of triable fact exist because knowledge is still an element of the inquiry under the Chapter Amendments. Bristol claims to have been confused and mistaken regarding the state of the law but has not revealed to the Court at what point it had learned about the decisions in *Roberts* and *Gersten* and whether at any point it had the benefit of the advice of counsel. Bristol's affidavit merely states, in conclusory fashion, that it is a small landlord and did not have counsel on retainer and that in its confusion, it sat by for over six years waiting for guidance from the DHCR. For the foregoing reasons, Bristol's motion seeking dismissal of plaintiffs' amended complaint is denied.

Turning next to plaintiffs' motion, in order to support the setting of rent using the default formula and to obtain an award of treble damages, the Chapter Amendments require plaintiffs to "establish that the defendant engaged in a fraudulent scheme to deregulate an apartment unit under the totality of the circumstances" (*Gomes*, 2025 NY Slip Op 00849 at *11). The inquiry is

155953/2017   STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 15 of 19

15 of 19

a case-by-case inquiry as articulated in *Aras* and "must be done with respect to *each* apartment unit" (see *Gomes*, 2025 NY Slip Op 00849 at *11). Additionally, the Court must examine and "consider all of the relevant facts and all applicable statutory and regulatory law and controlling authorities" (L 2024, ch 95, § 4) in making its inquiry.

First, the pre-*Roberts* deregulation of the apartments at issue alone is not sufficient to establish a fraudulent scheme to deregulate (see *Aras*, 221 AD3d at 13; *see also Gomes*, 2025 NY Slip Op 00849 at *11). Plaintiffs' claim that defendant deregulated additional units in the building after *Roberts* and *Gersten* could support a finding of a fraudulent scheme to deregulate, but plaintiffs have not established as a matter of law that defendant *knowingly* engaged in a fraudulent scheme. An examination of the Chadrjian affidavits and various memoranda of law submitted in support of Bristol's motion do not reveal when Bristol learned about *Roberts* or *Gersten* and the extent of that knowledge (see *Gomes*, 2025 NY Slip Op 00849 at *12). Even if the affidavits and memoranda "raise an inference that the defendant knew about the *Roberts* decision" prior to the 2016 DHCR FAQ, but deregulated nine apartments anyway, "they raise credibility issues that are inappropriate to decide on a motion for summary judgment (*id.*; *see Stukas v Streiter*, 83 AD3d 18, 23 [2d Dept 2011]).

Further, belated registrations do not necessarily establish a fraudulent scheme to deregulate, where Bristol allegedly deregulated the apartments at issue pursuant to the 1996 DHCR opinion letter and was not required to do so by the 2016 DHCR FAQ (*see Aras*, 221 AD3d at 14; *see also Hess*, 217 AD3d at 542). To the extent that Bristol reregulated and registered the apartments within the four-year lookback period, plaintiffs may challenge Bristol's calculations, but they are limited to the four-year period before the commencement of the instant action.

155953/2017  STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 16 of 19

For the foregoing reasons, there are triable issues of material fact as to whether Bristol knowingly engaged in a fraudulent scheme to deregulate an apartment unit under the totality of the circumstances. Thus, the portion of plaintiffs' motion seeking the application of the default formula to set the legal rent and the trebling of damages or, in the alternative, the freezing of the rent, is denied.

### Declaratory relief

CPLR 3001 provides, in relevant part, that the "court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed." While a declaratory judgment is an appropriate remedy in an action concerning rents, here, plaintiffs 1) seek a finding that their tenancies are subject to rent-stabilization, which is beyond dispute and has been conceded; 2) seek a declaration that requires a finding of fraud, which the Court declines to grant at this time based on the discussion above; and 3) requests the Court to compel defendant to offer rent-stabilized leases, which Bristol has already done. For the foregoing reason, this portion of the motion is also denied.

### Use and Occupancy

RPL § 220 provides, in relevant part, that a "landlord may recover a reasonable compensation for the use and occupation of real property, by any person, under an agreement." The First Department has held that

> "[t]he reasonable value of use and occupancy is the fair market value of the premises after the expiration of the lease . . . and it is the landlord, not the tenant, who has the burden of proving reasonable value of use and occupancy. . . . In determining the reasonable value of use and occupancy, the rent reserved under the lease, while not necessarily conclusive, is probative" (*Mushlam, Inc. v Nazor*, 80 AD3d 471, 472 [1st Dept 2011] [internal citations omitted]).

155953/2017   STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 17 of 19

[* 17]                                    17 of 19

A court may award use and occupancy where it would be patently unfair for a tenant to remain in possession without paying rent (*Brookes*, 2023 NY Slip Op 31257[U] at *17). A court may award use and occupancy retroactively and prospectively (*id.*).

The Court also retains broad discretion in deciding whether to compel payment of use and occupancy *pendente lite* (*see Alphonse Hotel Corp. v 76 Corp.*, 273 AD2d 124, 124 [1st Dept 2000]). An award of ongoing use and occupancy for the duration of a proceeding "'accommodates the competing interests of the parties in affording necessary and fair protection to both' and preserves the status quo until a final judgment is rendered" (*MMB Assoc. v Dayan*, 169 AD2d 422, 422 [1st Dept 1991] [internal citations omitted]).

Defendant seeks an order awarding past use and occupancy from the commencement of this action based on its calculations of the legal rents for the apartments, as well as use and occupancy *pendente lite* for the duration of the proceeding.

Plaintiffs do not object to the payment of "interim" use and occupancy while this action is pending, provided the use and occupancy amounts are set using the default formula.

Balancing the equities and exercising its broad discretion to award use and occupancy, the Court finds that defendant is entitled to ongoing monthly use and occupancy *pendente lite* at the last agreed upon amount in the most recent renewal lease for each apartment. The Court declines to order retroactive use and occupancy at this juncture. If it is determined at trial that plaintiffs have been overcharged, they will be entitled to a credit based on any paid use and occupancy.

*Attorney's Fees*

To the extent that both sides seek attorney's fees, it is well-established that "[o]rdinarily, only a prevailing party is entitled to attorney's fees" (*Nestor v McDowell*, 81 NY2d 410, 415

**155953/2017  STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY**
Motion No. 002

Page 18 of 19

[* 18]

18 of 19

[1993], *rearg denied* 82 NY2d 750 [1993]). Here, neither party has prevailed. In light of the foregoing, those portions of plaintiffs' and defendant's motions seeking attorney's fees are denied.

## CONCLUSION

Accordingly, it is hereby

ORDERED that the portion of the motion for summary judgment (Motion Sequence 001) brought by defendant Bristol East Company seeking use and occupancy is granted to the extent of awarding ongoing use and occupancy *pendente lite* at the last agreed-upon amounts due by the 5th of each month; and it is further

ORDERED that defendants' motion for summary judgment is otherwise denied; and it is further

ORDERED that the motion for summary judgment brought by plaintiffs Carly Stankiewicz, Jana Herman, Allyson Gerstein, Jessica Sloan, Skip Granger Swerdling, Timothy Sullivan, Tiahanna Gierl Sullivan (Motion Sequence 002) is denied; and it is further

ORDERED that the parties may renew upon the completion of discovery, or if a decision by the Court of Appeals on *Aras v B-U Realty Corp.*, 221 AD3d 5 [1st Dept 2023], is issued that may impact the relief granted herein.

This constitutes the decision and order of the Court.

| 3/10/2025 | | James d'Auguste, J.S.C. |
|---|---|---|
| DATE | | |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | | GRANTED IN PART | X | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

155953/2017 STANKIEWICZ, CARLY vs. BRISTOL EAST COMPANY
Motion No. 002

Page 19 of 19

19 of 19